Michael C. EVANS, Plaintiff,

v.

FLUOROSCAN IMAGING SYSTEMS, INC., Defendant.

No. 99C8159.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 5, 2001.

William R. Jackson, Attorney at Law, Chicago, IL, Michael C. Evans, Chicago, IL, pro se, for plaintiff.

Michael Alan Reiter, Duane Morris & Heckscher LLP, Chicago, IL, John Thomas Midgett, Law Office of John T. Midgett, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

GOTTSCHALL, District Judge.

Plaintiff Michael Evans filed suit *pro se* against his former employer, Fluoroscan Imaging Systems, Inc., under Title VII of the Civil Rights Act of 1964 and under 42 U.S.C. § 1981.[1] Evans worked as a Quality Control Inspector for Fluoroscan until he was terminated on July 22, 1997. Evans alleges that he was discriminated against because of his race and his handicap. He alleges that he was subjected to a hostile work environment, was denied training and promotion opportunities, and was ultimately discharged because of his race and handicap. Fluoroscan filed a motion for summary judgment on October 24, 2000, and this court set a briefing schedule on November 1. The court's briefing schedule ordered Evans to respond to the motion for summary judgment by November 27. As of December 4, Evans had not filed anything in response. On that date, Fluoroscan filed a motion to decide the summary judgment motion on the papers submitted, without a response. This court

---

1. Although Evans testified in his deposition that the complaint was prepared for him by legal counsel (Evans Dep. at 118), the complaint is signed only by Evans, and the only appearance filed on behalf of Evans at that time was a *pro se* appearance.

granted that motion on December 6, but did not decide the summary judgment motion. At that time, plaintiff was still not represented by counsel. On December 12, attorney William Jackson filed an appearance on behalf of plaintiff. On January 17, 2001, attorney Jackson filed, on behalf of Evans, a motion to vacate summary judgment. That motion was denied in court on January 24 because summary judgment had not yet been entered. (Transcript of Proceedings, 1/24/01). Since that time, Jackson has not filed any motions or documents with the court on behalf of Evans.

In the motion to vacate summary judgment, Jackson, on behalf of Evans, claims that Evans had difficulty retaining a lawyer because of financial limitations. He further asserts that "[t]he Plaintiff is confident that he can provide enough evidence to establish that Defendant's proffered reasons for terminating him were false and thereby [sic] making summary judgment inappropriate." (Mot. to Vacate at 2). If this is true, the court finds Jackson's handling of the case unreasonable. Jackson brought a motion seeking to vacate a judgment that was never entered. After this court denied the motion and explained the obvious reason for its denial, Jackson did nothing. Jackson has had over 6 months to file a motion properly asking the court to vacate the order entered on December 6, which deemed the summary judgment motion fully briefed. Jackson certainly could have drafted a brief and sought leave to file it late, along with an explanation for the delay. The court's order of January 24, 2001, does not foreclose the possibility of a late response. Instead, it simply states the obvious: that the court cannot vacate a judgment that was never entered. Given Mr. Jackson's handling of this motion, the court is now forced to decide the summary judgment motion on its merits, without a response from plaintiff.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. See Griffin v. Thomas, 929 F.2d 1210, 1212 (7th Cir.1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Id. The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## I. Discrimination on the Basis of Evans' Handicap— ADA Claim

Although the complaint does not mention the Americans with Disabilities Act ("ADA"), Fluoroscan points out that only the ADA would provide Evans with a cause of action stemming from discrimination on the basis of a physical handicap. Neither Title VII nor § 1981 provide a cause of action for discrimination on the basis of a handicap. Even if the court were to read Evans' complaint to state a cause of action under the ADA, the record compiled to date does not support such a claim. Thus, summary judgment must be granted as to any ADA claim.

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). As a threshold matter, Evans must show that he has a "disability" as defined by the ADA. Disability is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); *Hoffman v. Caterpillar, Inc.,* 256 F.3d 568, 572 (7th Cir.2001). The only physical or mental impairment suggested by the record before the court is Evans' pronounced limp, apparently caused by a hip fracture and a hamstring injury. (Evans Dep. at 23, 26). There is no evidence in the record suggesting that the limp substantially limited any of his major life activities. The only evidence of the limp's effect is Evans' own testimony that it did not affect his ability to perform his job duties. (Evans Dep. at 203). Similar physical ailments have frequently been held insufficient to rise to the level of a disability, because they do not substantially limit the major life activity of walking. *See, e.g., Moore v. J.B. Hunt Transport, Inc.,* 221 F.3d 944, 951 (7th Cir.2000) (plaintiff's rate and pace of walking was limited because of arthritis); *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir.1999) (plaintiff walked with a limp, walked slowly, and had difficulty walking in extreme cold); *Kelly v. Drexel University,* 94 F.3d 102, 106 (3d Cir.1996) (plaintiff walked with a limp, walked slowly, and could not walk for more than one mile); *Ragan v. Jeffboat LLC,* 149 F.Supp.2d 1053, 1065 n. 8 (S.D.Ind.2001) (collecting cases). Evans provides no evidence that his walking, or any of his other major life activities, are substantially limited by his physical ailment. Nor does he provide any record of an impairment that substantially limits his major life activities. Thus, he fails to meet either subsection (A) or (B) of the definition of disability. *See* 42 U.S.C. § 12102(2).

If Fluoroscan regarded Evans' injury as a disability, then it would qualify as a disability under the ADA. *See* 42 U.S.C. § 12102(2)(C). There is no evidence in the record, however, to suggest that Fluoroscan ever regarded Evans' ailment as substantially limiting his ability to work or perform any other major life activities. To the contrary, the only evidence in the record suggests precisely the opposite—that Fluoroscan never regarded Evans as having a disability. (Pabon Aff. at ¶ 5). Because the record before the court shows no genuine issue of material fact as to whether Evans had a disability, as defined by the ADA, defendant is entitled to summary judgment on Evans' ADA claim.

## II. Discrimination on the Basis of Race—Title VII and § 1981 Claims

Next, the court considers Evans' claim that he was discriminated against on the basis of race in violation of Title VII and § 1981. Evans alleges both a disparate treatment claim and a hostile work environment claim. The court concludes that defendant is entitled to summary judgment on both of these claims.

*Disparate Treatment*

■ Evans alleges that he was denied certain training opportunities, denied promotional opportunities, and eventually discharged because of his race. (Compl. at 3). Fluoroscan argues that Evans has presented no direct evidence of discrimina-

tion, and the court agrees. Although Evans asserted in his deposition that he was subjected to several racially derogatory remarks, the court, after examining the record presently before it, finds no evidence of any remarks dealing directly with race. Further, there is no evidence of any racially derogatory comment that was uttered in relation to the specific employment decisions Evans complains of. Hence, Evans has failed to present direct evidence that any of the employment decisions made by Fluoroscan were discriminatory. *See Cowan v. Glenbrook Security Servs., Inc.,* 123 F.3d 438, 443 (7th Cir.1997).

In the absence of direct evidence, Evans may avoid summary judgment by relying on the *McDonnell–Douglas* burden shifting framework. *See generally Gordon v. United Airlines, Inc.,* 246 F.3d 878, 885–86 (7th Cir.2001). Under this framework, Evans must first establish a prima facie case of discrimination, by showing: (1) that he was a member of a protected class; (2) that he was performing to the employer's legitimate expectations; (3) that he suffered an adverse employment action; and (4) that defendant treated similarly situated employees outside of the protected class more favorably, or replaced him with an employee not in the protected class. *Dunn v. Nordstrom, Inc.,* 260 F.3d 778, 784–85 (7th Cir.2001).[2] Once Evans has established a prima facie case of discrimination, the burden shifts to Fluoroscan to articulate a legitimate, non-discriminatory reason for the action. *See id.* at 784–85. Once Fluoroscan has articulated a legitimate nondiscriminatory reason, the burden then shifts back to Evans to demonstrate a genuine issue of material fact as to whether Fluoroscan's reason is pretextual. Evans can show pretext directly by presenting direct evidence to rebut Fluoroscan's reason, or indirectly by presenting evidence that: (1) Fluoroscan's explanation has no basis in fact, or (2) the explanation was not the "real" reason, or (3) at least that the reason stated was insufficient to warrant the adverse action. *See id.* at 787–88.

■ The court first examines the discharge and failure to promote claims. Even if the court assumes that Evans has established a prima facie case of discriminatory discharge or failure to promote, the defendant has articulated legitimate, nondiscriminatory reasons for these two actions. First, as to the failure to promote, the undisputed evidence in the record suggests that Evans was not qualified for any of the positions that opened up while Evans was employed at Fluoroscan, with one exception. (Gomez Aff.). The one position that Evans was qualified for was an Assembler II position, which would have been a demotion for Evans. Evans was already earning more per hour than Fluoroscan paid the person who was promoted to Assembler II. (Gomez Aff.). Thus, Fluoroscan has articulated legitimate reasons for not promoting Evans during his employment with Fluoroscan. Plaintiff has not, on the record currently before the court, offered any direct or indirect evidence to suggest that these reasons are pretextual. Thus, summary judgment is appropriate with respect to the failure to promote claims.

■ As to the discriminatory discharge claim, Fluoroscan has argued that Evans was discharged because of poor performance. Fluoroscan presents evidence to support this contention, which Evans has not disputed. (Pabon Aff.). Although Ev-

**2.** The elements of a prima facie case are slightly different in the case of failure to promote, but the court will assume that Evans has met his prima facie case with respect to the failure to promote.

ans' deposition testimony suggests that he disagreed with his supervisor, Johnny Pabon, about whether his performance was inadequate, there is no evidence in the record to suggest that Fluoroscan's stated reason was pretextual. There is no evidence showing that Fluoroscan's explanation has no basis in fact or was not the "real" reason for termination, or was an insufficient reason for termination. Thus, summary judgment is appropriate on Evans' discriminatory discharge claims.

■■■ Evans' final disparate treatment allegation is that he was denied training opportunities because of his race. In a failure to train discrimination claim the plaintiff must demonstrate: "(1) that he is a member of a protected group; (2) that the defendant provided training to its employees; (3) that he was eligible for training; and (4) that he was not provided training under circumstances giving rise to an inference of discrimination, i.e., that he was denied training given to other similarly situated employees who were not members of the protected group." *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir.2000); *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir.1998). In this case, Evans has not shown that he was denied training under circumstances giving rise to an inference of discrimination. He has not presented the court with any evidence whatsoever that similarly situated employees outside of the protected group received training opportunities that he did not. There is no evidence in the record of any specific training opportunity that he should have received. Thus, summary judgment is appropriate as to Evans' failure to train claim.

*Hostile Work Environment*

■■■ Finally, the court turns to Evans' hostile work environment claim. In order to establish a claim for a racially hostile work environment, a plaintiff must show: "(1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe and pervasive so as to alter the conditions of the employee's environment and create a hostile or abusive working environment; and (4) there is a basis for employer liability." *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). Plaintiff claims that he was subjected to several racially derogatory comments while working at Fluoroscan. In his deposition, he testified to a number of incidents or comments which he believed to be racially derogatory. Defendant argues that none of these comments were based on race, and that Evans could not even understand some of them, because they were spoken in another language. The defendants fail to recognize, however, that racially-neutral harassing comments could still be actionable, if Evans can show that he was targeted for such behavior because of his race. *See generally Smith v. Sheahan*, 189 F.3d 529, 533 (7th Cir. 1999) (targeting females for harassing behavior). But Evans has not come forward with evidence suggesting that he was targeted for harassing conduct or comments because of his race.

■■■ Even assuming that he could show a connection to race, Evans' hostile work environment claim fails because he has not presented evidence sufficient to create a genuine issue of material fact as to whether his working conditions were objectively offensive. Whether a work environment is hostile depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295

(1993). "The workplace that is actionable is the one that is 'hellish.'" *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir.1997) (citing *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430 (7th Cir. 1995)). Here, Evans points only to a relatively small number of comments. None of the comments threatened any sort of violence, and several of the comments seem to be innocent, work-related comments that Evans has perceived to be derogatory or discriminatory in some sense. For instance, Evans complains that when he did not receive a scheduled performance review, co-workers made comments such as "You are the man, Mike." (Evans' Dep. at 58). In another example, one of Evans' co-employees found some screws loose on a unit that Evans had inspected. The co-employee then came into Evans' working area "talking about we need a new QC [Quality Control] person. I should be QC." (Evans' Dep. at 54). Some comments, though they could conceivably be interpreted as targeting Evans because of his race, are not severe enough to constitute a hostile work environment. For instance, Evans complains that he got into an argument with a co-worker, and the co-worker told Evans it was his word against Evans' word. The co-employee then asked Evans who he thought that management would believe—him or Evans. (Evans' Dep. at 57). Because the co-employee was white, this comment could possibly have been made in reference to Evans' race. But in order to be objectively hostile, harassment must be sufficiently severe or pervasive as to alter Evans' working environment. *See Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806 (7th Cir.2000). Reviewing the record currently before the court, and keeping in mind the factors enumerated in *Harris*, the court concludes that Evans has not presented evidence sufficient to create a genuine issue of material fact as to whether his perception of a hostile working environment was an objectively reasonable one.

## Conclusion

For the foregoing reasons, Fluoroscan's motion for summary judgment is granted as to all claims.